THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **PRINCE BILLS, # R05932,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:25-cv-00343-GCS |
| | ) |
| **LATOYA HUGHES,** | ) |
| **JEREMIAH BROWN,** | ) |
| **NICHOLAS GOODCHILD,** | ) |
| **BRIAN L. TOLIVER, and** | ) |
| **STEPHEN M. GERMAK,** | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM & ORDER**

**SISON, Magistrate Judge:**

Plaintiff Prince Bills is an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Lawrence Correctional Center. He brings this civil action pursuant to 42 U.S.C. § 1983 for alleged violations of his constitutional rights. He claims that he was subjected to excessive force, denied medical care, and denied due process. Plaintiff seeks monetary damages and injunctive relief. (Doc. 1)

Plaintiff's Complaint is now before the Court for preliminary review under 28 U.S.C. § 1915A, which requires the Court to screen prisoner complaints to filter out non-meritorious claims.[1] *See* 28 U.S.C. § 1915A(a). Any portion of the Complaint that is legally frivolous, malicious, fails to state a claim for relief, or requests money damages

---

[1] The Court has jurisdiction to screen the Complaint due to Plaintiff's consent to the full jurisdiction of a Magistrate Judge (Doc. 6), and the limited consent to the exercise of Magistrate Judge jurisdiction as set forth in the Memorandum of Understanding between this Court and the IDOC.

from an immune defendant must be dismissed. *See* 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* Complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Service*, 577 F.3d 816, 821 (7th Cir. 2009).

## THE COMPLAINT

Plaintiff alleges that on October 12, 2024, Defendant Officer Goodchild conducted the 3:15 p.m. count on Plaintiff's housing wing. (Doc. 1, p. 3). Goodchild answered several other inmates' questions about the current lockdown by saying if they didn't like the accommodations they should bond out. Plaintiff was kneeling in front of the cell's food port with his left index finger and thumb in the port, waiting to speak with Goodchild. When Goodchild reached Plaintiff's cell, Plaintiff told him to "move along because his rank doesn't allow him to decide shit anyways." *Id.* at p. 3. Goodchild responded by smashing the food port onto Plaintiff's thumb and finger. *Id.* at p. 3-4. Plaintiff was unable to pull free without further injuring himself, so he pushed his entire left arm outside the food port. Instead of releasing Plaintiff, Goodchild used his full body weight to repeatedly smash Plaintiff's left arm in the food port. Goodchild then deployed pepper spray through the food port into Plaintiff's face. Plaintiff grabbed Goodchild's arm to prevent a further assault and held it momentarily before releasing Goodchild. Goodchild pulled away as Plaintiff let him go, and the momentum caused Goodchild to fall to the floor. Goodchild radioed for a response team and told Plaintiff, "[w]e're gonna fuck you up." *Id.* at p. 4.

Plaintiff asked for the warden or a video recorder but got no response. At about 7:06 p.m., a tactical team in riot gear used pepper spray to extract Plaintiff from his cell;

Plaintiff complied with their orders. (Doc. 1, p. 4-5). A nurse rinsed Plaintiff's eyes and checked his vitals, but did not treat the arm injuries inflicted by Goodchild.

Plaintiff was moved to restrictive housing on B-wing, where he learned from another inmate that Goodchild had done the same thing to him on March 1, 2024. (Doc. 1, p. 5). That incident was documented on video, as well as through a disciplinary report and grievances.

On October 13, 2024, Plaintiff was issued a disciplinary report for a major infraction (102A assault with injury). (Doc. 1, p. 5-6, 27). Plaintiff wrote Internal Affairs requesting an investigation but got no reply. *Id.* at p. 6, 28. Plaintiff requested Defendant Lt. Toliver and Defendant Officer Germak (of the Adjustment Committee) to interview witnesses on his behalf and told them of Goodchild's history of similar behavior. *Id.* at p. 6, 37-38. Toliver and Germak conducted Plaintiff's disciplinary hearing at his cell on October 17, 2024. Germak was "bias[ed] and combative" in response to Plaintiff's questions. *Id.* at p. 7. They failed to interview Plaintiff's witnesses or provide him due process because, according to Germak, "there's no need for any of that." *Id.*

Plaintiff wrote to Defendant Warden Brown on October 18, 2024, describing the incident with Goodchild and the disregard of his due process rights by Toliver and Germak. He requested Brown to not sign off on the adjustment committee's report without conducting a proper investigation. (Doc. 1, p. 7). Brown did not respond and signed the report on November 5, 2024. *Id.* at p. 8. Plaintiff was punished with four

months in segregation[2], four months of C-grade and commissary restriction, and six months of no contact visits. *Id.*

Brown ignored Plaintiff's attempt to discuss the matter when Brown toured the wing on November 21, 2024. (Doc. 1, p. 6-7). Brown has allegedly been put on notice of Goodchild's abusive conduct through several complaints and grievances, but he has taken no disciplinary action against Goodchild. *Id.* at p. 8.

Plaintiff never received any medical care for the injuries inflicted by Goodchild despite many requests for treatment.[3] His health care passes have been repeatedly cancelled.

Plaintiff alleges all defendants conspired to cover up the incident and suppress his efforts to hold Goodchild accountable. (Doc. 1, p. 5, 8).

Plaintiff sues each individual Defendant in his or her official and individual capacities. (Doc. 1, p. 1, 3). He seeks declaratory relief, monetary damages, and an injunction permanently removing Toliver and Germak from the disciplinary hearing committee and ordering proper training for officers. *Id.* at p. 13-16.

## DISCUSSION

Based on the allegations in the Complaint, the Court designates the following claims in this *pro se* action:

---

[2]   Plaintiff attaches the Final Summary Report of the Adjustment Committee, which states he was punished with *three months* in segregation, not four, as well as three months of C-grade and commissary restriction. (Doc. 1, p. 29-30).

[3]   Plaintiff attaches a letter stating he sustained a dislocated left shoulder, a torn labrum in the left shoulder, a sprained left hand, and multiple cuts and bruises because of Goodchild's use of force. (Doc. 1, p. 19).

| | | |
|---|---|---|
| Count 1: | | Eighth Amendment excessive force claim against Goodchild for slamming Plaintiff's left hand and arm in his cell's food slot on October 12, 2024. |
| Count 2: | | Illinois state tort claim against Goodchild for assault and battery for injuring Plaintiff on October 12, 2024. |
| Count 3: | | Fourteenth Amendment Due Process claim against Toliver and Germak for failing to interview Plaintiff's witness and denying Plaintiff a fair and impartial hearing on the disciplinary report for the October 12, 2024 incident where they recommended punishment for Plaintiff. |
| Count 4: | | Supervisory liability claim against Defendants Warden Brown and IDOC Director Hughes for allowing their employees to engage in excessive force and other misconduct, and for failing to properly train, supervise and discipline those employees. |
| Count 5: | | Illinois state law claim against Toliver, Germak, Brown, and Goodchild for civil conspiracy to deprive Plaintiff of his rights. |
| Count 6: | | Eighth Amendment deliberate indifference to medical needs claim against Goodchild for failure to obtain treatment for the arm injury he inflicted on Plaintiff on October 12, 2024. |

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[4]

---

[4] *See, e.g.*, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (noting that an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face.").

**Official Capacity Claims**

Plaintiff raises claims against each defendant in his or her individual and official capacities. Plaintiff's claims for monetary damages may only be pursued against state officials in their individual capacities. *See Brown v. Budz*, 398 F.3d 904, 918 (7th Cir. 2005); *Shockley v. Jones*, 823 F.2d 1068, 1070 (7th Cir. 1987). Claims for injunctive relief may be properly brought against Defendants Hughes and Brown in their official capacities. However, as discussed below, the relief Plaintiff seeks is beyond the scope permitted by the Prison Litigation Reform Act ("PLRA"). *See* 18 U.S.C. § 3626(a)(2). Accordingly, the official capacity claims against the individual defendants are dismissed without prejudice.

**Count 1**

The intentional use of excessive force by a prison guard against an inmate without penological justification constitutes cruel and unusual punishment in violation of the Eighth Amendment and is actionable under § 1983. *See Wilkins v. Gaddy*, 559 U.S. 34 (2010); *Wilborn v. Ealey*, 881 F.3d 998, 1006 (7th Cir. 2018). A plaintiff must show that an assault occurred, and that "it was carried out 'maliciously and sadistically' rather than as part of 'a good-faith effort to maintain or restore discipline.'" *Wilkins*, 559 U.S. at 40 (citing *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)). Plaintiff has stated a colorable excessive force claim against Goodchild for the events of October 12, 2024. Thus, Count 1 will proceed.

**Count 2**

Plaintiff's excessive force allegations in Count 1 also support an Illinois state law claim for assault and battery. *See, e.g., Shea v. Winnebago County Sheriff's Department*, No.

17-3078, 746 Fed. Appx. 541, 548 (7th Cir. Aug. 16, 2018) (discussing assault and battery under Illinois law). Because Count 2 derives from the same facts as Plaintiff's federal excessive force claim, it will also proceed against Goodchild. *See* 28 U.S.C. § 1367(a); *see also Wisconsin v. Ho-Chunk Nation*, 512 F.3d 921, 936 (7th Cir. 2008).

**Count 3**

Prisoners have limited due process rights under the Fourteenth Amendment in the context of a disciplinary hearing. For example, the accused inmate is entitled to the procedural protections outlined in *Wolff v. McDonnell*, 418 U.S. 539 (1974) (advance written notice of the charge, right to appear before the hearing panel, the right to call witnesses if prison security allows, and a written statement of the reasons for the discipline imposed). *See Hanrahan v. Lane*, 747 F.2d 1137, 1140-41 (7th Cir. 1984). Further, a guilty finding must be supported by "some evidence." *See Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994). *See also Scruggs v. Jordan,* 485 F.3d 934, 941 (7th Cir. 2007) (noting that even a meager amount of supporting evidence is sufficient).

Here, Plaintiff alleges Toliver and Germak denied his witness request before finding him guilty; he further alleges they conducted the hearing in a biased manner. While the denial of witnesses may have violated the *Wolff* requirement, Plaintiff has no viable due process claim unless the faulty procedure deprived him of a constitutionally protected liberty interest. Plaintiff must show that the conditions of his disciplinary segregation imposed an "atypical and significant hardship" on him when compared to the conditions he would have faced in non-disciplinary segregation. *See Sandin v. Conner*, 515 U.S. 472, 484 (1995); *see also Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir. 1997). To

determine whether a segregation term was "atypical and significant," the Court looks at the duration of the punitive segregation term as well as the conditions. *See Marion v. Columbia Correction Inst.*, 559 F.3d 693, 697-698 (7th Cir. 2009); *see also Hardaway v. Meyerhoff*, 734 F.3d 740 (2013). Only if the disciplinary segregation period was sufficiently long *and* if the conditions of confinement were unusually harsh, may an inmate maintain a civil rights claim for deprivation of a liberty interest without due process. "[S]ix months of segregation is not such an extreme term and, standing alone, would not trigger due process rights." *Marion*, 559 F.3d at 698 (internal quotation omitted).

Here, Plaintiff was punished with only three or four months in disciplinary segregation – the final disciplinary report states three months, and the Complaint alleges four. However, the Complaint includes no factual allegations to suggest Plaintiff was held under conditions that imposed an atypical or significant hardship. In fact, for relatively short periods of disciplinary segregation, an inquiry into the specific conditions of confinement may be unnecessary. *See, e.g., Marion*, 559 F.3d at 698 (stating that "we have affirmed dismissal without requiring a factual inquiry into the conditions of confinement" where the disciplinary segregation term is brief). Without additional facts indicating Plaintiff was held under conditions that were atypical and/or significant, the C-grade demotion and other sanctions do not implicate a protected liberty interest. *See Thomas v. Ramos*, 130 F.3d 754, 762 n.8 (7th Cir. 1997). For these reasons, Count 3 fails to state a colorable due process claim against Toliver or Germak, and will be dismissed without prejudice.

### Count 4

There is no supervisory liability in civil rights cases brought under § 1983. "[T]o be held individually liable, a defendant must be 'personally responsible for the deprivation of a constitutional right.'" *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001)). Supervisors and administrators are responsible only for their own acts, not "for failing to ensure that subordinates carry out their tasks correctly." *Horshaw v. Casper*, 910 F.3d 1027, 1029-30 (7th Cir. 2018). Plaintiff does not allege that Defendants Brown or Hughes were present or otherwise personally involved when Goodchild allegedly injured him. Count 4 will therefore be dismissed for failure to state a claim upon which relief may be granted.

### Count 5

Plaintiff raises his civil conspiracy claim under Illinois state law. (Doc. 1, p. 12). He asserts that Toliver, Germak, Goodchild, and Brown conspired to suppress the truth and prevent him from holding Goodchild accountable for his actions. He specifically points to Germak's and Toliver's conduct at the disciplinary hearing and the fact that his medical requests have been repeatedly cancelled by unidentified staff. *Id.* at p. 7-8. However, as discussed above, Plaintiff has failed to state viable federal claims against Toliver or Germak related to the disciplinary hearing or against Brown for his supervisory role (Counts 3 and 4). The only claims that survive review under § 1915A are against Goodchild for excessive force, assault/battery, and deliberate indifference to medical needs on October 12, 2024 (Counts 1, 2, and 6). Plaintiff does not allege that Toliver, Germak, or Brown were involved in this alleged misconduct by Goodchild – instead, their

alleged actions took place later. Under Illinois law, civil conspiracy does not constitute a standalone claim. *See Sonrai Systems, LLC v. Waste Connections, Inc.*, 658 F. Supp. 3d 604, 612 (N.D. Ill. 2023) (citing *Adcock v. Brakegate*, 164 Ill. 2d 54, 645 N.E.2d 888 (Ill. 1994)).

Plaintiff cannot proceed on a state civil conspiracy claim against Toliver, Germak, or Brown when his Complaint fails to support any other viable claim against them. Accordingly, Count 5 will be dismissed.

## Count 6

Prison officials violate the Eighth Amendment's prohibition against cruel and unusual punishment when they act with deliberate indifference to a prisoner's serious medical needs. *See Rasho v. Elyea*, 856 F.3d 469, 475 (7th Cir. 2017). To state such a claim, a prisoner must plead facts and allegations suggesting that (1) he suffered from an objectively serious medical condition, and (2) the defendant acted with deliberate indifference to his medical needs. *Id.* Further, a guard who uses excessive force on a prisoner has "a duty of prompt attention to any medical need to which the beating might give rise[.]" *Cooper v. Casey*, 97 F.3d 914, 917 (7th Cir. 1996). Under this authority, Defendant Goodchild, who perpetrated the assault on Plaintiff and then allegedly prevented him from getting timely medical attention for his injuries, may be found liable for deliberate indifference to Plaintiff's need for medical care.

## INJUNCTIVE RELIEF

Plaintiff requests injunctive relief – specifically, an order permanently removing Toliver and Germak from the hearing committee and requiring more training for officers. (Doc. 1, p. 14). In addition to the fact that Toliver and Germak will be dismissed from the

action for failure to state a claim against them, Plaintiff's desired injunction runs afoul of statutory limits on such relief. *See* 18 U.S.C. § 3626(a)(1)(A). The Prison Litigation Reform Act ("PLRA") provides that prospective relief "with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff[.]" Such relief must be "narrowly drawn, extend[] no further than necessary to correct the violation of the Federal right, and [be] the least intrusive means necessary to correct the violation of the Federal right." *Id*. Because Plaintiff's vague request for more training for officers does not meet these criteria, Defendants Hughes and Brown, who would be responsible for implementation of injunctive relief, *see Gonzales v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011), will be dismissed from the action without prejudice.

### PENDING MOTION

Plaintiff's Motion for Leave to Proceed In Forma Pauperis (Doc. 11) is a duplicate of Doc. 8, which was granted on April 15, 2025 (Doc. 9). The motion at Doc. 11 is therefore **DENIED AS MOOT**.

### DISPOSITION

The Complaint states colorable claims in Counts 1, 2, and 6 against Nicholas Goodchild. Counts 3, 4, and 5, and Defendants Latoya Hughes, Jeremiah Brown, Brian L. Toliver, and Stephen M. Germak are **DISMISSED** from the action without prejudice.

The Clerk shall prepare for Nicholas Goodchild: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to Defendant's place of employment as identified by

Plaintiff. If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk and shall not be maintained in the court file or disclosed by the Clerk.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244 and Local Rule 8.2, Defendant need only respond to the issues stated in this Merit Review Order**.

Plaintiff is **ADVISED** that if judgment is rendered against him and the judgment includes the payment of costs under 28 U.S.C. § 1915, he will be required to pay the full amount of the costs, even though his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and the opposing parties informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not

later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. PROC. 41(b).

Finally, based on the allegations in the Complaint, the Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

**IT IS SO ORDERED.**

**DATED: May 5, 2025.**

Digitally signed by Judge Sison
Date: 2025.05.05 13:07:27 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**

### NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, the defendants will enter an appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so**.