UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| PRINCE BILLS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:25-cv-00343-GCS |
| | ) |
| NICHOLAS GOODCHILD, | ) |
| | ) |
| Defendant. | ) |

MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

INTRODUCTION AND BACKGROUND

Pending before the Court is Defendant Goodchild's motion for summary judgment on the issue of exhaustion of administrative remedies. (Doc. 29).[1] Defendant argues that Plaintiff failed to exhaust his administrative remedies because he failed to pursue his allegations through the prison's grievance process *prior* to filing this lawsuit. Plaintiff filed an opposition to the motion. (Doc. 33). Plaintiff counters that the prison has disregarded his claims which prevented a proper investigation of the incident and that he received final responses from "Springfield." Because there is no genuine dispute as to any material fact, the Court finds an evidentiary hearing unnecessary. For the reasons set forth below, the Court **GRANTS** the motion.

---

[1]  Defendant filed the required Federal Rule of Civil Procedure 56 notice informing Plaintiff of the failure to respond to the motion for summary judgment. *See* (Doc. 30).

Plaintiff Prince Bills, a former inmate with the Illinois Department of Corrections ("IDOC"), who was previously incarcerated at Lawrence Correctional Center ("Lawrence"), brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff claims he was subjected to excessive force, denied medical care, and denied due process. He filed suit on March 12, 2025. (Doc. 1). On May 5, 2025, pursuant to 28 U.S.C. § 1951A, the Court conducted the preliminary review of the complaint and allowed Plaintiff to proceed on proceed on an Eighth Amendment excessive force claim against Defendant Goodchild for slamming Plaintiff's left hand and arm in his cell's food slot on October 12, 2024, (Count 1); an Illinois state tort claim against Goodchild for assault and battery for injuring Plaintiff on October 12, 2024, (Count 2); and an Eighth Amendment deliberate indifference claim for denying Plaintiff medical care against Defendant Goodchild for the arm injury he inflicted on Plaintiff on October 12, 2024, (Count 6). (Doc. 13).

## FACTS

The allegations/claims allowed to proceed in this case against Defendant Goodchild occurred on October 12, 2024. The relevant grievance, according to Defendant Goodchild, is a grievance # K75-1024-2784 dated October 14, 2024. In this grievance, Plaintiff stated in part: "Sgt Goodchild took offense to my line of questioning and as a result became visibly angry and without warning Sgt Goodchild purposely close my food port upon my left hand and fingers causing injury." On October 24, 2024, Plaintiff's

grievance was received at the Grievance Officer level. On November 27, 2024, the counselor responded: "Response from Sgt. Goodchild: 'Individual Bills was issued a disciplinary report on 10-12-24 for forcing his food port back open while I was attempting to secure. Bills grabbed my wrist and forcibly pulled me into the door. Pepper spray was utilized for my safety.'" On December 16, 2026, the grievance officer recommended that the grievance be moot. The next day, the Chief Administrative Officer ("CAO") concurred. The Administrative Review Board ("ARB") received this grievance on December 26, 2024, and on April 15, 2024, the ARB determined that this grievance was resolved. (Doc. 29-3, p. 2-5).

Another grievance Plaintiff contends is relevant to this case is a grievance dated November 12, 2024, # K75-1124-2997. This grievance contains claims regarding a disciplinary report dated October 12, 2024, incident # 202402609. The ARB received this grievance on December 9, 2024, and on May 8, 2025, the ARB determined Plaintiff's grievance to be mixed, that the staff conduct could not be substantiated, and that the disciplinary report be expunged due to a failure to state how the individual was properly identified in the narrative of the report. (Doc. 33, p. 7).[2]

Plaintiff filed suit on March 1, 2025. (Doc. 1).

## LEGAL STANDARDS

Summary Judgment is proper "if the pleadings, depositions, answers to

---

[2] Plaintiff only submitted the ARB's determination regarding this grievance.

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Gupta v. Melloh*, 19 F.4th 990, 997 (7th Cir. 2021) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986)); FED. R. CIV. PROC. 56(a). Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). *See* 42 U.S.C. § 1997e(a). That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* (emphasis added). The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *See, e.g.*, *Williams v. Rajoli,* 44 F.4th 1041, 1045 (7th Cir. 2022) (noting that "[w]e take a strict compliance approach to exhaustion.") (citations omitted). Exhaustion must occur before the suit is filed. *See Chambers v. Sood*, 956 F.3d 979, 981 (7th Cir. 2020); *Williams*, 44 F.4th at 1043. A plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.*

Moreover, "[t]o satisfy the exhaustion requirement, an inmate must take each of the steps prescribed by the state's administrative rules governing prison grievances." *Chambers,* 956 F.3d at 983; *Jackson v. Esser,* 105 F.4th 948, 956 (7th Cir. 2024). Consequently, if a prisoner fails to use a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted."

*Maddox v. Love,* 655 F.3d 709, 721 (7th Cir. 2011) (citations omitted). The purpose of exhaustion is to give prison officials an opportunity to address the inmate's claims internally, prior to federal litigation. *See Hacker v. Dart,* 62 F.4th 1073, 1084 (7th Cir. 2023).

Under *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey v. Conley*, 544 F.3d 739, 740-741 (7th Cir. 2008); *Jones v. Lamb*, 124 F.4th 463, 469 (7th Cir. 2024). Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Court set forth the following procedures:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Pavey,* 544 F.3d at 742 (7th Cir. 2008); *Wagoner v. Lemmon*, 778 F.3d 586, 590 (7th Cir. 2015).

As an inmate confined within the Illinois Department of Corrections, Plaintiff was required to follow the regulations contained in the Illinois Department of Correction's Grievance Procedures for Offenders ("grievance procedures") to exhaust his claims. *See* 20 ILL. ADMIN. CODE § 504.800, *et seq*. The grievance procedures first require inmates to file their grievance with the counselor within 60 days of the discovery of an incident. *See* 20 ILL. ADMIN. CODE § 504.810(a). The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 ILL. ADMIN. CODE § 504.810(c). Grievances that are unable to be resolved through routine channels are then sent to the grievance officer. *See* 20 ILL. ADMIN. CODE § 504.820(a). The Grievance Officer will review the grievance and provide a written response to the inmate. *See* 20 ILL. ADMIN. CODE § 504.830(a). "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer within two months after receipt of the grievance, when reasonably feasible under the circumstances." 20 ILL. ADMIN. CODE § 504.830(e). "The Chief Administrative Officer shall review the findings and recommendation and advise the offender of his or her decision in writing. *Id.*

If the inmate is not satisfied with the Chief Administrative Officer's response, he or she can file an appeal with the Director through the ARB. The grievance procedures

specifically state, "[i]f, after receiving the response of the Chief Administrative Officer, the offender still believes that the problem, complaint[,] or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director. The appeal must be received by the Administrative Review Board within 30 days after the date of the decision." 20 ILL. ADMIN. CODE § 504.850(a). The inmate shall attach copies of the Grievance Officer's report and the Chief Administrative Officer's decision to his appeal. *Id.* "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." 20 ILL. ADMIN. CODE § 504.850(d). "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, when reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." 20 ILL. ADMIN. CODE § 504.850(e).

The grievance procedures allow for an inmate to file an emergency grievance. To file an emergency grievance, the inmate must forward the grievance directly to the CAO who may "[determine] that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis. 20 ILL. ADMIN. CODE § 504.840(a). If the CAO determines the grievance should be handled on an emergency basis, then the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him what action shall be taken. 20 ILL. ADMIN. CODE § 504.840(b). If the CAO determines the grievances

"should not be handled on an emergency basis, the offender shall be notified in writing that he or she may resubmit the grievance as non-emergent, in accordance with the standard grievance process." 20 ILL. ADMIN. CODE § 504.840(c). When an inmate appeals a grievance deemed by the CAO to be an emergency, "the Administrative Review Board shall expedite processing of the grievance." 20 ILL. ADMIN. CODE § 504.850(f).

## DISCUSSION

Defendant asserts that Plaintiff failed to exhaust administrative remedies because he filed suit concerning these allegations and that the ARB had not issued a final decision at the time he filed his complaint on March 1, 2025. Specifically, Defendant argues that while the record reflects that Plaintiff initiated the grievance process regarding the allegations against Defendant, Plaintiff did not wait to complete the ARB reviews before filing this case. Plaintiff counters that Defendant is seeking to use a "minor technicality . . . to slow or stop the wheels of justice." (Doc. 33, p. 3).

Plaintiff cannot sue first and exhaust later. And that is precisely what Plaintiff did here. Plaintiff's allegations against Defendant Goodchild occurred on October 12, 2024. He submitted the first grievance, K75-1024-2784, on October 14, 2024. The ARB received the grievance on December 26, 2024, and the ARB issued its decision on April 15, 2025. Thereafter, he submitted the second grievance, K75-1124-2997, on November 12, 2024. The ARB received this grievance on December 9, 2024, and the ARB issued its decision on May 8, 2025. Plaintiff filed this lawsuit on March 1, 2025. Further, there is no evidence

in the record that *at the time* of the filing of the lawsuit, March 1, 2025, that Plaintiff's claims in the grievances were being ignored. Just a little over four and half months passed between the submission of the first grievance at the first level on October 14, 2024, and the filing of this lawsuit on March 1, 2025. And just a little over three and half months passed between the submission of the second grievance at the first level on November 12, 2024, and the filing of this lawsuit on March 1, 2025. That is not enough time to complete a meaningful review of the issues contained in those grievances. Accordingly, this case is dismissed without prejudice for failure to exhaust administrative remedies. *See, e.g.*, *Chambers v. Sood*, 956 F.3d 979, 984 (7th Cir. 2020) (stating that "[a] premature lawsuit must be dismissed without prejudice, and the prisoner must file a new suit fully exhausting administrative remedies."). Plaintiff may refile this lawsuit.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** the motion for summary judgment on the issue of exhaustion of administrative remedies filed by Defendant Goodchild (Doc. 29). The Court **DISMISSES without prejudice** Plaintiff's complaint containing Counts 1, 2, and 6 for failure to exhaust administrative remedies. The Court **DIRECTS** the Clerk of the Court to enter judgment reflecting the same and to close the case.

**IT IS SO ORDERED.**

**DATED: January 21, 2026.**

Digitally signed by Judge Sison
Date: 2026.01.21 13:01:39 -06'00'

**GILBERT C. SISON**
**United States Magistrate Judge**